Good morning, your honors. Good morning. May it please the court, Alejandro Garcia here for Ms. Griselda Sanchez, who is the petitioner in this case. Could you speak a little louder, please? Yes, Judge, I apologize for that. Thank you. Alejandro Garcia for Ms. Sanchez, the petitioner in the case. Your honors, in this case, even if the I-213 is admissible in this case, there's absolutely no evidence that Ms. Sanchez provided any affirmative act of help, assistance, or encouragement in the aim of smuggling. The immigration judge based his findings solely on the admissions of Ms. Sanchez contained in the I-213. And as I indicated in my opening brief, if you look carefully at all of the admissions contained in the I-213, there's absolutely no evidence of any physical act that Ms. Sanchez undertook. What do you do with item number two in the admissions? Item number two? Looking at the second page of the I-213, the fourth paragraph, the item number two. It says she was attempting to cross Andrea across the border as a favor for the parents of the child. Correct. So that was her intention. She was attempting to get this child to cross the border as a favor for the child's parents. That shows her intent. And so once that is established, why isn't the third paragraph that she provided the birth certificate of a different child for this child an affirmative act in support of her intent to cross the child over the border? Okay. The first problem with that is what did she do to attempt to cross the alien across the border? There's no evidence of what she did. Read fairly, that sentence is about her state of mind. What was she trying to accomplish? And what she was trying to accomplish was to sneak this undocumented child over the border. Your Honor, I think Aguilar-Gonzalez, this circuit's case, tells us that there must be some kind of physical act. And I'm saying attempt. But it seems to me that what Aguilar turned on was the fact that the person who's hatched the plan in that case was the father. The individual themselves never admitted or never was proved to independently have that intention to accomplish this end. And so it was more ambiguous as to what her cooperation meant. But here you have the person, it seems to me, admitting that this was their personal intent. Well, Your Honor, I think the fact that it's unclear proves my point. I don't think what's attempting is, I think it's completely vague and ambiguous. What did she do to attempt? We have no idea. What she did is described then in Part 3. Okay, Part 3. Her state of mind was I'm going to do a favor for the parents of this child and try to sneak the child across the border. That's what Number 2 says. And then Number 3 says in order to do that, I provided the birth certificate of somebody else. Well, Your Honor, I didn't. Isn't that an affirmative act? Absolutely not, Judge. There's, well, let's say even if we take it for argument's sake that that's what the intent is in Number 2. You still need the affirmative act in Number 3 to establish that she assisted or encouraged the act. Can we go back in DI 213 to the first paragraph on that page that says the officer that your client presented for the undocumented entrant a valid State of California birth certificate bearing the name of somebody else? Absolutely. The immigration judge did not rely on that particular section. Could he have? Could he have? Well, he didn't. I mean, that's cause for speculation. I mean, I'm arguing that. Yeah, but there's, I know that cause for speculation. This is, I'm not a witness. The question is, is there sufficient evidence in this record from which the Bureau could have concluded that your client actually presented this? Let's just sue for argument's sake that they could have considered that sentence. Go back to the same problem. Presented. What does presented mean? Well, she didn't. She was a passenger. She was a passenger in the vehicle. Yeah, but she says she knew that it was an invalid birth certificate. So did the alien in Aguilar-Gonzalez. Excuse me. I have a question about your colloquy with Judge Hurwitz. I'm looking at, well, I'm not sure. It's got so many numbers on it, but it's page four of the immigration judge's decision, which also has a 007 stamp and a page 35 stamp. At the bottom of the page, it says, based upon the admissions made by the respondent to inspecting officers, and that gives the date, this court concludes that the evidence clearly shows. Now, why isn't that reliance on all the admissions contained in the I-213? And you carved out the one about presenting the birth certificate. Why is that possible? Because this seems to base it on all the admissions. That's not an admission, Judge. Description by the officer. Description. Exactly. Okay. Fair enough. And then he gets to the point in the next paragraph of the I-213. First, Dr. Grisela Sanchez admitted Andrea Cortez Miranda as being a Mexican citizen and national by birth in Mexico. Andrea Cortez did not. Okay. I understand what you're saying. I follow your argument. And furthermore, Judge, I would like to point this out. You refer to the second and third, number two and number three. This I-213 is a summary, I presume, of the actual complete record of sworn statement. Yeah. So it's the officer's interpretation. I wanted to ask you a question about that. You moved to keep the actual sworn statement out of evidence below. You're cliented. Correct. It's in the record, and we can look at it. And for some reason, the immigration judge granted that motion. Right. But it's a little bit strange for you to say this is the officer's summary when we have the actual statement there, and it's a lot worse than this. I read it, Judge. I'm not sure you get it both ways. You can't say this is a bad summary, because if it's a bad summary, we ought to look at the actual one. And the actual one, I think, is more implicating of your client than this one. I perhaps agree with you. But we're... Yeah. So bad summary is not an argument that works. This is a better summary for you than the actual transcript. Absolutely. Absolutely. I'm not going to deny that. But it is a summary. So it's a summary based on a record of sworn statement. There's a Q&A with the alien. And this is a summary. So these are not quotes, Your Honor. These are not quotes at all. So... Wouldn't we have to extend Aquilar to agree with you? Because in that case, she didn't do anything other than sit in the car, and the court interpreted what she did as reluctantly acquiescing to the father taking the birth certificate. Isn't this somewhat more than that? It expresses her intent to do this act. And then it says she provided the birth certificate. So would we have to extend Aquilar to say that the IJ's determination was not supported by substantial evidence? Absolutely not, Judge. I believe Aquilar Gonzalez is even worse. I'll read you straight... Except that there it was clear that someone else had the plan. And here it appears that your client had the plan. Right. But she provided... But after a third request by the father, she... It said that... As I understand it, the panel said, we don't know who actually picked up the birth certificate. That's right. Whereas, here it says she provided the birth certificate. Well, provided in what way? What did she do to provide it? Does that mean physically handing over a birth certificate? That can be interpreted in many ways. Well, if you'd left a statement in the record, we would know that her husband asked for the birth certificate, and she gave it to him. But the statement's not in the record. That's correct. So all we have now is her admission that she provided it. Right. And that's my point. What does provided mean? Does it matter what it means? I think any of the meanings of the word provided would mean that she provided it, and so she didn't act. I disagree, Judge. How is that? It's going to give me the hypothetical as to how she didn't provide it. Oh, easily. Just like what happened in Aquilar Gonzalez. Well, she's in the car with the child, and so how does she provide it? This is talking about the car, right? We don't know who retrieved the birth certificate or how it was delivered to the... So what does provided mean in this context? I guess I'm not understanding any interpretation. I think that's the point, that we don't know what it means. There's no... I understand what it means. I'm trying to understand what you think it might mean. Okay. Is that substantial evidence? Does that convince you of aliens smuggling a serious immigration charge? Provided. What does that mean? Here's a question. Hey, honey. Hey, honey. Where's Junior's birth certificate? It's in the drawer. Did she provide it? She made it available. Would that be enough? Would that be enough to be an affirmative act? Absolutely not, because Aquilar Gonzalez tells us that... Did she say it was in the drawer in that case? She provided it the same way. Counsel, your time has expired, but we've asked a lot of questions, and you two may have a minute for rebuttal when the time comes. We'll hear from the government next. May it please the Court. My name is Jeffrey Liest. I'm appearing on behalf of the Attorney General. In this case, the petitioner was probably found to be inadmissible for having engaged in alien smuggling. Here we have the knowledge, which the Court has already pointed to in Statement 2 of the charge. Aquilar Gonzalez, we had knowledge. Yes. Okay, so that doesn't distinguish this case from that one. Well, Aquilar Gonzalez, I think, as has been noted by the Court, involved less action. Well, I want to figure out where the differences are. Sure. You started out with knowledge, but there was knowledge in Aquilar Gonzalez. Right. There was knowledge, but there was also... So knowledge is not the difference. What's the difference? The difference is the actual affirmative act in this case. Well, what's the affirmative act? The providing of the birth certificate to the infant. In Aquilar Gonzalez, before they go across the border, she gives a birth certificate to her father, knowing that it's going to be used for bad purposes. That's the issue, Your Honors. In Aquilar Gonzalez, the record was not clear as to what happened. The Court found that this was not a situation where she provided it. Well, the record was clear about what happened in Aquilar Gonzalez. The record was unclear about what legal significance to it. In Aquilar Gonzalez, the opinion says her father asked for a birth certificate. She didn't want to give it, but sooner or later she gave it. Well, I think that the rationale was that she gave an affirmative statement that you can borrow it. There wasn't an actual... The Court focused on that the record was unclear as to whether or not she simply said, okay, you can have it, which would be acquiescence, or whether she actually physically said, here's the document. Is there a meaningful difference between acquiescence and, here it says, provided? I think there is, Your Honor. I think that if you acquiesce, then you're not actually physically providing something. But doesn't the statute say aid, abet, encourage in any way? Sure. So if you come to me and say, I'd like to smuggle some aliens across the border. Do you have any birth certificates? And I say, there's a bunch in that drawer. Help yourself. I acquiesce. I haven't aided or abetted? No, you have, Your Honor. Okay, so that's not a difference between the two cases. What's the other difference? I think it's mainly the providing, Your Honor. And it's also the fact that she was a part of the plan. Well, it seems to me that that is key, because if you read Aguilar, it cites cases that, a case at least, that's in another context that focuses on the intent to achieve the objective. Right. And so it seems to me that while it doesn't say it in these terms, that the cornerstone to Aguilar is the intent. Because what they didn't prove there was that the alien involved independently had the intention to accomplish the end of smuggling the person in, because it was her father's plan. And she went along with her dad, but she was not shown to have independent plan. Here she is. And it seems to me that was key in Aguilar. It is, Your Honor. Well, but in Aguilar, let's just follow the story. In Aguilar, the Petitioner's I-213 says that when they come back across the border, she presents two U.S. birth certificates to immigration authorities. Knows that they're not accurate birth certificates. Right? Right. She knows that the children that she's with, the infants that she's sitting on either side of her, are not documented. Right. And she presents two birth certificates to immigration authorities that are not valid birth certificates. Right. And in your view, that's different from this case in what way? Because, as Judge Graber has said, is that the independent desire to go about bringing these people into the country, she did not plan this. So there can be the difference between this case and that case is that Ms. Aguilar-Gonzalez was acting under duress? That was one of the points that the Court made, is that she reluctantly did this. That she did not want to be a part of this. That she repeatedly said, no, I don't want to do this. And because she felt like she had to, because her father, I think, was paying her mortgage, she felt like this was something that she could not simply not do. Does the Court say there's a duress defense to the alien smuggling statute? Do they make a duress? Yes. Or a lack of enthusiasm defense? Well, it was part of the rationale was that this was somebody who didn't have the intent, didn't go out setting forth to let these people in the country, is that she was badgered by her father. It felt like she had to do it. But she didn't have the independent desire to go about bringing this out. So where in the Aguilar-Gonzalez record is there any evidence that she was badgered by her father to go across the border, other than provide the access to the birth certificate? That I'm not sure about. I'm not sure about the actual going to Mexico aspect. I was focusing more on the actual issue of whether or not she, allowing her father to take the birth certificate, was the acquiescence in that situation. In terms of accompanying them to Mexico, that I don't know. So what do we have here on the birth certificate? What's the record on the birth certificate here? What do you mean? What does this record indicate that this Petitioner did with respect to the birth certificate? That she provided it for the usage of the alien who's being smuggled, presented it to the immigration officer. Well, presented is not in the immigration. Provided. Right. Do you agree with your opposing counsel that the I.J. focused only on her admissions, not on the rest of the 213? I think the immigration judge focused on the entire record. That was what he primarily cited. Well, no. Didn't he say, based on her admissions, this is what I find? Sure. He didn't rely on the presented part of the I.213? Not expressly, no, Your Honor. Okay. I don't see in Aguilar that she presented the, am I missing something? I don't recall she was. Look at page 1207. I don't see that at all. I think that she was sitting between the kids, but I don't recall that. The I.213 says she presented to U.S. Petitioners. And the G.166 said that the driver presented it. Yeah. So there's a conflict. There's a conflict in the record. Right. Trying to take the evidence to the light and most favorable for the government. Right. There was an issue with whether or not the I.213 was independently verifiable and whatnot. I think that the dissent in Aguilar also focuses on kind of the problem with casting too wide of a net as far as acquiescence. And that if you go beyond the plain reading of what this says, she provided diversificates that it may be possible that you can come up with an alternative explanation of what provided means aside from the actual giving it to or allowing them to actually take it from you. And that that's not what the standard of review is here, Your Honors. It's that it's not whether you can come up with an alternative rationale or an alternative decision. It's whether there's substantial evidence. No, but our problem, if you will, our challenge. Sure. Is to figure out how, if at all, this case differs from Aguilar because we're bound by that decision, whether right or wrong, and it's not up to us to say. Right. It exists as precedent. We have to follow it unless it's meaningfully distinguishable. So that's what we're struggling with. And the other thing I'm struggling with is statute, of course, doesn't talk about providing birth certificates or anything else. It's very wide statute. It's very broad. And one would think, looking at the facts in Aguilar, that they fell within the statute. But a panel in this Court says they didn't. So I'm trying to figure out why this case is different. And that's a very good point, Your Honor. I mean, word up to me. I think Aguilar was improperly decided. But we don't get a second shot at it. Aguilar says the Court determined that if the I.J. determined that the woman physically handed the birth certificates to her father, that finding was not based on substantial evidence. So the determination was that she had not taken a physical act. That was how I understood the case. We don't have necessarily specific evidence that she took a physical act. But it does say that she provided them. Right. And she's in the car. It isn't by some suggestion. Right. I don't think you need to do a physical act. It's an affirmative act. I think that, I mean, if we narrow it too much to actually physically handing somebody, then you get to ridiculous situations where if you go in the car and sit down, put the thing on the table next to you, they pick it up. I mean, it seems like you're able to then say, oh, I'm not actually affirmatively doing something because you picked it up off the ground, whereas the intent is still there. The desire is still there. The action of actually obtaining the birth certificate and providing it is still there. So I'm still having some difficulty figuring out. So tell me again what the difference is between this one. All that we have is the word provided. Right. Which is perfectly consistent, it seems to me, with the okay, take it situation in Aguilar-Gonzalez. So what is the difference between these two cases? I would say it's the – I think that this evidence is actually more than Aguilar-Gonzalez. In that case, there was the issue of whether or not she acquiesced. Here we have provided. I think provided is a stronger description of what actually took place, what action was actually taking place. I also think it's the fact that she was actually a part of the prearrangement here. It was not simply something that she acquiesced to, that somebody else had the plan and that she went along with it. This is the one where she was the one who got the birth certificate. Whether or not she physically handed it to her, she still put it into that person's possession so that they could then use it to try and sneak into the country. So I think it's the – I mean, is there anything in this record that says she put it into Karina's possession? I think that provided is a sufficient indication that she took an affirmative act to take it from her possession to the other one's possession. But did you read all that into the word provided? Sure. I mean, I don't think that – I'm just trying to find out what's in the record as opposed to – I don't think that the Court has to kind of bend over backwards trying to figure out any possible connotation of the word provided. I think that you can just take it by the plain meaning here. If we're dealing with Sanchez's statements, what do we do with a statement that says she went with her husband to Mexico because she didn't want him to go alone? Is that evidence of participation in a smuggling operation? I mean, I think it's certainly participation. I don't know if that undermines or strengthens our case. I mean, I think that the main issue is not whether or not she accompanied her husband to Mexico. It's whether or not she provided the birth certificates when she went with to Mexico. Let me just ask one more question. Aguilar-Gonzalez, is there any evidence of coercion in Aguilar-Gonzalez's accompaniment of her father to Mexico? Again, I don't know if – I know that she felt guilted into the birth certificate issue. I don't know if that carried on into the – I know she was reluctant to give him access to the birth certificate. Right. I mean, they talked about how she didn't want to do it because – or she ended up doing it because he was paying the mortgage and she felt like she had to and stuff like that. I'm not sure. Well, the refusal there was both to accompany him and provide him. Okay. She refused to accompany him twice. Yeah. There was evidence. The reluctance was with respect to that. Hesitancy. Okay. I was asking about coercion. I take it originally. I don't know if it's coercion or if it's reluctance or what you want to say. But it was definitely – it was not that she desired to bring this about of her own volition. Thank you. The father says that he insisted that she go with him and she obeyed me because I am her father. I don't know if that's eternal coercion or – Then we're all in trouble. I mean, in Aguilar, there's also the document from the father saying, listen, she was not involved with this. This was my decision, my plan, my everything. This is a different situation. She actually took the Affirmative Act here. Thank you, counsel. Thank you. Mr. Garcia, you have one minute. Your Honor, we still don't have an answer to what the Affirmative Act is. All counsel says is she provided it. It's a circular argument. How did she provide it? The alien in Aguilar-Gonzalez also provided the birth certificate with even more knowledge than we have evidence of here. And yet, the Aguilar-Gonzalez court said, well, it's important to us how she provided that birth certificate. Did she physically hand it over or not? If she physically handed it over to her father, I think that would have been enough evidence of an Affirmative Act. I think that's the act. In this case, we don't have it. We can speculate all day long, but the evidence that the judge relied on is simply the admissions, and the admissions simply fail to provide us an Affirmative Act of any kind. There's too much speculation. And to find somebody removable based, in my opinion, very vague and vague argument is just insufficient. It's not even close, in my opinion. Thank you, counsel. We appreciate the arguments of both of you. And this case is submitted.
judges: Graber, Ikuta, Hurwitz